UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN HAVERTY,

Plaintiff,

v.

STIHL INCORPORATED,

Defendant.

No. 2:25-cv-03043-DAD-DMC

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS IN PART

(Doc. Nos. 19, 20, 31)

This matter is before the court on defendant's motion to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Doc. No. 19.) On January 21, 2026, the motion was taken under submission on the papers pursuant to Local Rule 230(g). (Doc. No. 22.) For the reasons set forth below, the court will grant defendant's motion to dismiss in part.

**BACKGROUND**

On September 15, 2025, plaintiff Steven Haverty filed this action against defendants STIHL Incorporated, Stihl Holding AG & Co. KG, Andreas Stihl AG & Co. KG, and Does 1–50 in the Shasta County Superior Court. (Doc. No. 1 at 11.) On October 17, 2025, defendant STIHL Incorporated ("defendant") removed this action to this federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (*Id.* at 1.) On December 15, 2025,

/////

pursuant to stipulation by the parties, plaintiff filed his first amended complaint ("FAC").[1] (Doc. Nos. 15–18.) In his FAC, plaintiff alleges as follows.

Plaintiff is a resident of Shasta County, California. (Doc. No. 18 at ¶ 16.) Defendant STIHL Incorporated is a Delaware corporation with its principal place of business in Virginia Beach, Virginia and does business in California. (*Id.* at ¶ 17.) Defendant designs, manufactures, distributes, and sells outdoor power equipment including, among other things, chainsaws. (*Id.* at ¶ 21.) Defendant's California-directed business involves the distribution and service of STIHL chainsaws, including the model MS 290. (*See id.* at ¶ 18.)

On September 16, 2023, plaintiff was using a STIHL chainsaw model MS 290 (the "subject chainsaw") to cut wood outside of his home in Fall River Mills, California when it suddenly exploded due to the defective design of its gas cap and/or fuel system. (*Id.* at ¶¶ 20, 22–23.) The explosion caused plaintiff's clothing and body to catch fire. (*Id.* at ¶ 23.) Plaintiff sustained significant and severe burn injuries involving approximately 27% of his body's surface area. (*Id.* at ¶ 24.) Plaintiff required extensive medical treatment and rehabilitation as a result of his injuries. (*Id.* at ¶ 25.)

Plaintiff was using the subject chainsaw "as intended" or "misus[ing]" the chainsaw "in a reasonably foreseeable manner" when it exploded. (*Id.* at ¶ 51.) He neither knew nor had reason to know of the subject chainsaw's defect prior to or at the time of the explosion. (*Id.* at ¶ 34.) Defendant, on the other hand, knew or should have known that the design and manufacture of the subject chainsaw's gas cap and/or fuel system were defective when the chainsaw left defendant's control and at the time of the explosion. (*Id.* at ¶¶ 33, 42, 48.) Defendant failed to provide plaintiff with sufficient warning that the subject chainsaw was defective. (*Id.* at ¶¶ 35, 52–53.) Defendant also failed to recall or retrofit the subject chainsaw even though it knew or had constructive knowledge of the defect. (*Id.* at ¶ 44.)

/////

[1] Plaintiff's FAC does not name defendants STIHL Holding AG & Co. KG and Andreas STIHL AG & CO. KG. (Doc. No. 18.) Accordingly, those defendants were terminated from this action on December 15, 2025.

Based on the foregoing allegations, plaintiff asserts the following three causes of action: (1) strict products liability – design defect; (2) negligence; and (3) negligence – products liability. (*Id.* at ¶¶ 26–55.) Plaintiff seeks, among other forms of relief, actual, compensatory, general, and special damages. (*Id.* at 11–12.)

On December 23, 2025, defendant filed the pending motion to dismiss plaintiff's FAC. (Doc. No. 19.) In support of its motion, defendant submits a declaration from STIHL Incorporated Internal Audit Manager William Schlemmer, in which he asserts as follows.

Defendant did not design MS 290 chainsaws. (Doc. No. 19-2 at ¶ 6.) Defendant began manufacturing MS 290 chainsaws in 2000 and discontinued MS 290 chainsaws in 2012. (*Id.* at ¶¶ 10–11.) All MS 290 chainsaws sold to the public were manufactured in Virginia. (*Id.* at ¶ 9.) Defendant manufactured the subject chainsaw on February 7, 2006, which it then sold through its distribution branch to an independent retailer, Accent Supply, located in Maryland. (*Id.* at ¶¶ 26–28.) Accent Supply sold the subject chainsaw to an individual named Brian Bernard on March 18, 2006. (*Id.* at ¶ 29.) Defendant does not know how the subject chainsaw was transferred from Mr. Bernard to plaintiff or how it reached California; and, in September 2023, defendant did not manufacture, distribute, or sell MS 290 chainsaws anywhere but it did ship other STIHL-branded products to its California distribution branch for sale to independent retailers in California. (*Id.* at ¶¶ 12, 18–19, 30–31.)

On January 12, 2026, plaintiff filed his opposition to the pending motion.[2] (Doc. No. 21.) Defendant filed its reply thereto on January 22, 2026. (Doc. No. 23.)

## LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Rule 12(b)(2)

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of personal jurisdiction. In opposing such a motion, the plaintiff bears the burden of proof to show that jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). When a

---

[2] On January 12, 2026, plaintiff filed a request for leave to file a late opposition along with his brief in opposition to defendant's motion to dismiss. (Doc. No. 20.) The request will be granted.

defendant's motion to dismiss is based on written materials rather than an evidentiary hearing and is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make a *prima facie* showing that personal jurisdiction exists in order for the action to proceed. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Picot*, 870 F.3d at 1211.

In determining whether personal jurisdiction has been established, the court accepts the plaintiff's allegations as true and resolves any conflicts between the parties over statements contained in affidavits in the plaintiff's favor. *Love*, 611 F.3d at 608; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, where allegations are controverted by a defendant, the plaintiff cannot "simply rest on the bare allegations of [the] complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 855 F. App'x 324 (9th Cir. 2021)[3] (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Thus, only constitutional principles constrain the jurisdiction of a federal court in California. *Love*, 611 F.3d at 608–09.

Under the Fourteenth Amendment's due process clause, courts may exercise personal jurisdiction over non-resident defendants only so long as there are sufficient "minimum contacts" between the defendant and the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Each defendant's contacts with the forum State must be assessed individually." *Calder*

[3] Citations to the unpublished Ninth Circuit opinions throughout this order are appropriate pursuant to Ninth Circuit Rule 36-3(b).

*v. Jones*, 465 U.S. 783, 790 (1984).[4] "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068.

**B. Motion to Dismiss Pursuant to Rule 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

---

[4] A plaintiff must also establish personal jurisdiction for "each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.*

supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**ANALYSIS**

In the pending motion to dismiss, defendant contends both that: (1) this court lacks personal jurisdiction over it; and (2) plaintiff fails to state any cognizable claims upon which relief can be granted. (Doc. No. 19-1 at 9–22.)

**A. Personal Jurisdiction Pursuant to Rule 12(b)(2)**

Defendant argues that plaintiff's complaint must be dismissed because this court lacks both general and specific personal jurisdiction over it. (*Id.* at 9–13.) In opposition, plaintiff responds that defendant's contacts with California are sufficient for this court to exercise specific personal jurisdiction over defendant.[5] (Doc. No. 21 at 6–10.)

In determining whether a court has specific jurisdiction over a non-resident defendant, the Ninth Circuit employs the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

/////

[5] Defendant argues that this court lacks general personal jurisdiction over it because it is incorporated in Delaware and its principal place of business is in Virginia. (Doc. No. 19-1 at 9–10.) In his opposition, plaintiff advances arguments only with respect to specific personal jurisdiction, apparently conceding that this court lacks general personal jurisdiction over defendant (Doc. No. 21 at 6–10). *See Lopez v. County of Los Angeles*, No. 3:15-cv-03804-TEH, 2016 WL 54123, at *2 (N.D. Cal. 2016) ("[B]ecause Plaintiff failed to oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition as implicit consent to the merits of the arguments asserted[.]"). Accordingly, the court will consider only whether specific jurisdiction over defendant exists in California.

*Picot*, 780 F.3d at 1211 (quoting *Schwarzenegger*, 374 F.3d at 802); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). "The plaintiff bears the burden of meeting the first two prongs while the defendant shoulders the burden on the final prong." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023).

1. Purposeful Availment or Purposeful Direction

Defendant does not challenge the first prong of the three-step inquiry. (Doc. No. 19-1 at 10–11.) Defendant acknowledges that shipping STIHL-branded products to its branch in California and selling those products to independent retailers in California in September 2023 created minimum contacts with California. (*Id.*) Accordingly, the court concludes that the first prong is met and turns to the second prong. *See St. v. Marriott Int'l, Inc.*, No. 18-cv-01032-CJC-DFM, 2018 WL 6074588, at *2 (C.D. Cal. Aug. 15, 2018) (accepting the defendants' concession that a defendant had sufficient minimum contacts to support personal jurisdiction).

2. Claim Arises Out of or Relates to Forum-Related Activities

Plaintiff has the burden to show that its claims "arise out of or relate to" defendant's contacts with California. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1091 (9th Cir. 2023). "The Supreme Court announced in [*Ford Motor Company v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021)] that arise out of and relate to are alternatives: for a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, a company serves a market for a product in the forum state and the product malfunctions there." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504–05 (9th Cir. 2023) (internal quotation marks and ellipses omitted).

a. *Whether the Claims Arise Out of Forum-Related Activities*

"We have long understood that for an injury to arise out of a defendant's forum contacts required 'but for' causation, in which 'a direct nexus exists between [a defendant's] contacts [with the forum state] and the cause of action.'" *Id.* at 504 (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)).

/////

Defendant argues that but-for causation does not exist here because the subject chainsaw was not designed, manufactured, or distributed in California. (Doc. No. 19-1 at 11.) Defendant has presented evidence by way of declaration that the subject chainsaw was manufactured in Virginia, sold to an independent retailer in Maryland, and then sold to an individual (not plaintiff) in Maryland. (*See* Doc. No. 19-2 at ¶¶ 9, 26–29.) Defendant contends that it is unaware how the Subject Chainsaw ended up in plaintiff's possession after the initial sale. (Doc. Nos. 19-1 at 11; 19-2 at ¶¶ 30–31). Plaintiff does not clearly articulate why his injury arose out of defendant's contacts and instead focuses his argument on why his injury relates to defendant's forum contacts, as discussed in more detail below. (*See* Doc. No. 21 at 6–9.)

Accordingly, the court finds that plaintiff has not shown that defendant's California contacts are a but-for cause of his injuries because plaintiff does not allege that defendant shipped the subject chainsaw to California. *Yamashita*, 62 F.4th at 506 (holding that the plaintiff did not establish but-for causation because "[plaintiff] d[id] not allege that [defendants] shipped the subject battery" into the forum state). The court also therefore concludes that plaintiff's injuries did not arise out of defendant's California contacts. *Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025) ("Where Plaintiff does not allege that any products were sold or shipped to *him*, the Court finds it particularly challenging to conclude that Plaintiff's harm arose out of Defendant's selling goods to Californians."). The court next turns to the issue of whether plaintiff's injury *relates to* defendant's forum contacts.

b. *Whether the Claims Relate to Forum-Related Activities*

"Three aspects of *Ford*'s reasoning provide guidance on how to determine whether a defendant's contacts sufficiently relate to a plaintiff's injury." *Yamashita*, 62 F.4th at 505.

> First, "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts" because, "[i]n effect, relatedness proxies for causation" in some cases. Second, "a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." And third, "'relate to' does not mean anything goes," and instead "relatedness requires a close connection between contacts and injury."

/////

*Reynolds v. EzriCare LLC*, 700 F. Supp. 3d 830, 840 (N.D. Cal. 2023) (internal citations omitted) (quoting *Yamashita*, 62 F.4th at 505–06).

In *Ford*, two individuals were in accidents involving vehicles manufactured by Ford. 592 U.S. at 356. One involved a 1996 Explorer in Montana; the other involved a 1994 Crown Victoria in Minnesota. *Id.* The plaintiffs originally brought suit in Montana and Minnesota, respectively. *Id.* Ford moved to dismiss both lawsuits, arguing that the Montana and Minnesota courts lacked jurisdiction over it because—despite not disputing that it had done such substantial business in both forum states, including that it advertised, sold, and repaired the exact vehicle models at issue, such that it had purposefully availed itself of conducting activities in both forum states—Ford had not designed, manufactured, or sold in Montana or Minnesota the particular vehicles involved in the accidents. *Id.* at 356–57, 361, 364–65. Rather, the vehicles were designed, manufactured, and sold outside of the forum states, and only later resales and relocations by consumers had brought the vehicles to Montana and Minnesota. *Id.* at 356–57. According to Ford, the link between its conduct in the forum states and the accidents were not causal in nature, which, in its view, was required for jurisdiction to attach. *Id.* at 361.

The Supreme Court rejected Ford's "causation-only" approach and held that the connection between the plaintiffs' claims and Ford's activities in Montana and Minnesota was sufficient to support specific jurisdiction. *Id.* at 371. In doing so, the Court reasoned that Ford had "systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States" such that there was a "strong relationship among the defendant, the forum, and the litigation" even though the specific cars involved in the accidents were sold outside of the forum states. *See id.* at 365–66 (internal quotation marks omitted).

Here, defendant stresses that the facts of this case are not like those in *Ford*, primarily because defendant discontinued the MS 290 model chainsaws over 11 years before "the time of the events underlying the dispute" in September 2023. (Doc. No. 19-1 at 12.) Therefore, according to defendant, plaintiff's claims do not relate to defendant's September 2023 contacts with California, which were limited to other STIHL products. (*Id.* at 12–13.) Conversely,

plaintiff argues that the facts of this case are analogous to those in *Ford* because defendant systematically serves a market in California for STIHL-branded products, including chainsaws, and plaintiff was injured while using the subject chainsaw in California. (*See* Doc. No. 21 at 6–7.) Accordingly, plaintiff argues his claims relate to defendant's California contacts even though he does not allege the subject chainsaw was sold in California. (*See id.*)

The court is not persuaded by defendant's argument that this case is distinguishable from *Ford* on the basis that defendant discontinued the manufacture, distribution, and sale of the particular product model in the forum state[6] before September 2023. First, defendant misinterprets the holding of the only case it cites —*Steel v. United States*, 813 F.2d 1545 (9th Cir. 1987)—in support of its suggestion that the only relevant contacts for purposes of a specific personal jurisdiction analysis are its California contacts pertaining to MS 290 chainsaws (or lack thereof) in September 2023. (Doc. Nos. 19-1 at 12–13; 23 at 7–8.) Defendant apparently interprets *Steel*'s holding that "courts must examine the defendant's contacts with the forum at the time of the events underlying the dispute" to mean that courts cannot consider a defendant's contacts before that point in time. (*See id.*); 813 F.2d at 1549. The facts and the reasoning of the court in *Steel* do not support defendant's interpretation of the holding in that case. In *Steel*, an action for declaratory judgment to establish the validity of a divorce judgment, the court held that a plaintiff's former husband's contacts with California during the marriage, separation, and divorce proceedings determined whether the court had personal jurisdiction at the time of the declaratory judgment action and that such "contacts with California d[id] not expire simply because of his lack of later contacts with the state." 813 F.2d at 1546, 1549–50. In other words,

---

[6] Defendant does not appear to contest that it distributed and sold MS 290 model chainsaws in California prior to the model's discontinuation in 2012. *See LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022) (explaining that the Court "cabin[ed] *Ford* only to those circumstances in which the same model of the product was 'advertised, sold, and serviced' by the defendant" in the forum state). Plaintiff alleges that defendant marketed, distributed, sold, and supported the MS 290 model in California. (*See* Doc. No. 18 at ¶ 11.) In response, defendant has presented evidence that it discontinued the MS 290 model in 2012 and it therefore was not manufacturing, distributing, or selling the MS 290 model anywhere in September 2023. (Doc. No. 19-2 at ¶¶ 11–12.) However, defendant does not explicitly address whether it was marketing, distributing, or selling the MS 290 model *in California* prior to the model's discontinuation in 2012.

the court held that a defendant's contacts with the forum state (or lack thereof) *after* the events giving rise to the dispute—not the defendant's contacts with the forum state *before* the events giving rise to the dispute—do not affect "the minimum contacts that might give [defendant] fair warning of suit[.]" *See id.* at 1549–50.

Second, the facts of this case are overwhelmingly similar to *Ford*—(1) the subject chainsaw was not designed, manufactured, distributed, or sold in California, (2) the subject chainsaw allegedly malfunctioned in California, (3) the subject chainsaw was not initially sold to plaintiff, and (4) defendant admits that its distribution and sale of STIHL-branded products in California created minimum contacts with California in September 2023.[7] Finally, defendant certainly "should have foreseen the risk" that selling outdoor power equipment in California might still cause injuries years after the product's discontinuation. *See Yamashita*, 62 F.4th at 506–06 (emphasizing that *Ford*'s reasoning supports a determination that a defendant's contacts sufficiently relate to a plaintiff's injury "if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff"). For the reasons explained above, the court finds that plaintiff's claims relate to defendant's California-based contacts. (Doc. Nos. 19-2 at ¶¶ 6–7, 26–29; 19-1 at 10–11.)

3. Fair Play and Substantial Justice

"Once Plaintiff satisfies the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable[,]" that is would not comport with fair play and substantial justice. *Herbal Brands*, 72 F.4th at 1096 (internal quotation marks omitted). The Ninth Circuit has identified a seven-factor balancing test to evaluate the reasonableness of exercising personal jurisdiction:

/////

---

[7] Additionally, while the Supreme Court did not appear to consider this fact in reaching its holding in *Ford*, the court notes that Ford had ceased manufacturing one of the subject vehicle models, the Crown Victoria, years before the underlying accident occurred. The accident involving the Crown Victoria at issue in *Ford* occurred in 2015. *See Bandemer v. Ford Motor Co.*, 931 N.W.2d 744, 748 (Minn. 2019). This website indicates that Ford had announced the discontinuation of the Crown Victoria in 2007 and ceased selling the Crown Victoria in 2011: https://www.cars.com/research/ford-crown_victoria/.

> (1) [T]he extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

Defendant does not contest the reasonableness of the court's exercise of specific personal jurisdiction over it in either its motion or reply.[8] Defendant's potential arguments relating to reasonableness have therefore been waived. *Nobles v. VaultMS.com, LLC*, No. 8:23-cv-00704-JWH-KES, 2024 WL 3298426, at *5 (C.D. Cal. May 28, 2024) (finding that the defendants waived potential arguments relating to reasonableness where they did not contest reasonableness in their briefing); *see also Aoki v. Gilbert*, No. 2:11-cv-02797-MCE, 2013 WL 1324267, at *5 (E.D. Cal. Apr. 2, 2013) ("[C]ourts only analyze the [reasonableness] factors that a defendant addresses.") (citing *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1079–80 (9th Cir. 2011)). Accordingly, the court finds that defendant has failed to meet its burden to contest this court's jurisdiction based upon reasonableness. *Nobles*, 2024 WL 3298426, at *5 (holding that the defendants failed to meet their burden to show that the exercise of jurisdiction would not be reasonable where defendants waived their potential arguments relating to reasonableness); *California Brewing Co. v. 3 Daughters Brewing LLC*, No. 2:15-cv-02278-KJM-CMK, 2016 WL 1573399, at *6 (E.D. Cal. Apr. 19, 2016) ("[D]efendants' motion does not address the reasonableness prong. Accordingly, defendants have not met their burden of presenting a 'compelling case' of the unreasonableness of this court's exercising personal jurisdiction over them.")

/////

/////

[8] Conversely, in his opposition, plaintiff argues that a majority of the seven factors are met, and as a result, exercising jurisdiction here is reasonable and comports with fair play and substantial justice. (*See* Doc. No. 21 at 9–10.)

For these reasons, the court will deny defendant's motion to dismiss the FAC for lack of personal jurisdiction brought pursuant to Rule 12(b)(2).[9]

**B. Failure to State a Claim Pursuant to Rule 12(b)(6)[10]**

Defendant moves to dismiss all claims brought against it in the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will address each claim in turn.

1. Strict Products Liability – Design Defect (Claim 1)

Defendant moves to dismiss plaintiff's claim for strict products liability based upon a design defect theory, arguing that plaintiff failed to allege plausible claim with respect to either a design defect or causation. (Doc. No. 19-1 at 14.)

The court turns first to defendant's argument that plaintiff has not plausibly alleged a design defect. Defendant contends that plaintiff's allegations that the subject chainsaw had a defect in design of the gas cap and/or fuel system are conclusory. (*Id.* at 14–15.) Plaintiff responds that his allegations "provide more than labels or conclusions" because they identify the product, the nature of the malfunction, the hazard mechanism, and the resulting harm. (Doc. No. 21 at 12.)

"To show a design defect, a 'plaintiff must ordinarily show (1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury.'" *Rovid v. Graco Children's Prods. Inc.*, No. 17-cv-01506-PJH, 2018 WL 5906075, at *14 (N.D. Cal. Nov. 9, 2018) (quoting *Nelson v. Superior Ct.*, 144 Cal. App. 4th 689, 695 (2006). "To be actionable under the design

---

[9] Because the court has found that it has personal jurisdiction over defendant, the court need not address plaintiff's request for jurisdictional discovery. (Doc. No. 21 at 9, 11.) Additionally, plaintiff has moved to transfer venue in lieu of dismissal for lack of personal jurisdiction. (Doc. No. 31.) The court will also deny plaintiff's motion to transfer as moot.

[10] Plaintiff seeks judicial notice of three exhibits to "support[] the plausibility of [p]laintiff's allegations concerning fuel-cap/fuel-system fire hazards and STIHL's notice/knowledge and post-sale safety conduct." (Doc. No. 21-1 at 3.) However, "[a] plaintiff cannot utilize judicially noticed documents for the purpose of supplementing the allegations in a complaint." *D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*, No. 2:20-cv-09770-MWF-KSX, 2021 WL 4459063, at *3 (C.D. Cal. May 19, 2021) (collecting cases). Accordingly, the court denies plaintiff's request for judicial notice.

defect theory of product liability, a product design must be defective in one of two ways." *Fussy v. RTI Surgical*, No. 1:21-cv-01307-DAD-BAK, 2022 WL 1122615, at *3 (E.D. Cal. Apr. 14, 2022). "First, under the 'consumer expectation test,' a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner. Second, under the 'risk-benefit test,' a product's design is defective if the design embodies 'excessive preventable danger,' that is, the risk of danger inherent in the design outweighs the benefits of such design." *Id.* (internal citations omitted).

As defendant correctly points out, plaintiff has failed to allege any non-conclusory facts to adequately allege a design defect theory of strict product liability. As an initial matter, plaintiff does not plead any nonconclusory facts regarding what aspects of the gas cap and/or fuel system made the design defective. This failure alone provides grounds for dismissal. *Id.* (dismissing strict products liability design defect claim because "plaintiff's complaint contain[ed] no factual allegations identifying what aspect of the pedicle screws' design made them defective"); *Fontalvo ex rel. Fontalvo v. Sikorsky Aircraft Corp.*, No. 13-cv-00331-GPC-KSC, 2013 WL 4401437, at *4 (S.D. Cal. Aug. 15, 2013) (dismissing strict products liability claim "because Plaintiff d[id] not include factual allegations that identif[ied] what aspect of the subject component design and manufacture made it defective"); *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1155 (E.D. Cal. 2010) ("[A] bare allegation that the taser weapon suffered from a 'design defect' is an insufficient legal conclusion.").

Plaintiff's complaint also only contains conclusory allegations that the subject chainsaw failed to satisfy either the consumer expectation test and/or risk-benefit test.[11] (Doc. No. 18 at ¶ 20, 32.) The lack of alleged facts demonstrating how either test is met also requires dismissal of this claim. *Jordan v. STEMCO Prods., Inc.*, No. 19-cv-02790-KAW, 2019 WL 3457809, at *3 (N.D. Cal. July 31, 2019) (dismissing strict products liability design defect claim where plaintiff "fail[ed] to plead any facts in support of either test"); *Adams v. Abbott Lab'ys*, No. 2:24-cv-

---

[11] Specifically, plaintiff alleges merely that "the design of the gas cap and/or fuel system was defective because the Subject Chainsaw failed the consumer expectation test and/or the risk-benefit test under California law" and the "chainsaws were defective, unreasonably dangerous, and failed to perform as a reasonable consumer would expect[.]" (Doc. No. 18 at ¶¶ 20, 32.)

00555-KJM-JDP (PS), 2024 WL 3446512, at *2 (E.D. Cal. July 17, 2024) (dismissing strict liability design defect claim where "[t]he complaint allege[d] no facts in support of either test"), *report and recommendation adopted*, No. 2:24-cv-00555-KJM-JDP (PS), 2024 WL 4133628 (E.D. Cal. Sept. 10, 2024); *Lucas*, 726 F. Supp. 2d at 1155–56 (dismissing a strict liability design defect claim where no facts alleged in the complaint described how the product failed to meet the minimum safety expectations of an ordinary consumer or in what way the risks of the design outweighed the benefits and how the particular design of the product caused the plaintiff harm).

Because the court finds that plaintiff has not adequately alleged a design defect, the court need not address defendant's additional argument that plaintiff has not plausibly alleged causation. (Doc. No. 19-1 at 15–16.) Accordingly, the court will grant defendant's motion to dismiss plaintiff's strict products liability claim.

2. Products Liability – Negligence (Claim 3)

Defendant moves to dismiss plaintiff's third cause of action for negligent products liability, arguing that he has failed to adequately allege the claim under any permissible theory. (*Id.* at 16.)

"Products liability claims sounding in negligence can be premised on three theories: design defect, manufacturing defect, or failure to warn." *Kinnee v. TEI Biosciences Inc.*, No. 22-cv-00604-JLS-DDL, 2023 WL 8191097, at *9 (S.D. Cal. Nov. 27, 2023) (internal quotations omitted). Plaintiff does not specify a particular theory he seeks to pursue as to his products liability claim but appears to allude to each theory throughout his complaint and argues he has alleged each theory in his opposition. (*See* Doc. Nos. 18 at ¶¶ 47–55; 21 at 13–14.) The court will therefore address each theory in turn.

a. *Design Defect*

The court has already found that plaintiff has failed to plausibly allege a strict products liability design defect claim because plaintiff did not allege facts demonstrating how the subject chainsaw was defective. Accordingly, for the same reasons explained above, the court finds that plaintiff has not adequately alleged a negligent products liability claim based upon a design defect theory. *Perez v. Apyx Med. Corp.*, No. 25-cv-06713-JST, 2026 WL 2691359, at *5 (N.D. Cal.

Sept. 14, 2026) ("To state a claim for strict liability and for negligence, Plaintiffs must allege how the product was defective.") (internal quotations omitted) (citing *King v. Select Comfort Corp.*, No. 19-cv-01362-CJC-SHK, 2019 WL 13438460, at *2 (C.D. Cal. Nov. 13, 2019), *aff'd*, 824 F. App'x 532 (9th Cir. 2020)); *Lee v. Igloo Prods. Corp.*, No. 2:25-cv-01526-JAM-CSK, 2026 WL 480766, at *3 (E.D. Cal. Feb. 20, 2026) (dismissing strict liability and negligent products liability claims predicated upon an alleged design defect where the plaintiff failed to adequately allege what aspects of the product made it defective).

b. *Manufacturing Defect*

"[T]o allege a manufacturing defect claim, [plaintiff] must make allegations identifying and explaining how the [subject product] either deviated from defendant's intended result/design or how the product deviated from other identical products." *Oregon v. Bos. Sci. Corp.*, No. 1:21-cv-01092-DAD-BAK, 2022 WL 1607960, at *6–7 (E.D. Cal. May 20, 2022) (discussing that in the strict liability context the manufacturing defect analysis "applie[s] equally to" negligent manufacturing defect analysis). Plaintiff has failed to allege how the subject chainsaw deviated from defendant's intended result or design or from other identical products. Rather, plaintiff merely advances conclusory allegations that the subject chainsaw and "its defective design of the gas cap/and or fuel system" were "not properly manufactured . . . for the use and purpose for which they were intended" and that defendant "negligently and carelessly" manufactured the subject chainsaw. (*See* Doc. No. 18 at ¶¶ 48, 50.) The court finds that plaintiff has not adequately alleged a negligent products liability claim based upon a manufacturing defect theory.

c. *Failure to Warn*

A negligent failure to warn claim requires pleading the following seven elements:

> (1) the defendant manufactured, distributed, or sold the product; (2) the defendant knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (3) the defendant knew or reasonably should have known that users would not realize the danger; (4) the defendant failed to adequately warn of the danger or instruct on the safe use of the product; (5) a reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (6) the plaintiff was harmed; and (7) the defendant's failure

> to warn or instruct was a substantial factor in causing the plaintiff's harm.

*Tucker v. Wright Med. Tech., Inc.*, No. 11-cv-03086-YGR, 2013 WL 1149717, at *13 (N.D. Cal. Mar. 19, 2013) (internal quotations omitted). Defendant argues plaintiff has failed to plead the second, third, fourth, fifth, and seventh elements. (*See* Doc. No. 19-1 at 19–21.) The court therefore turns first to the knowledge element.

Plaintiff's allegations concerning defendant's purported knowledge are also conclusory. Specifically, plaintiff alleges that "[d]efendant knew the chainsaws were defective in design and manufacture," (Doc. No. 18 at ¶ 33), "[defendant] knew or should have known that the Subject Chainsaw's design of the gas cap and/or fuel system was defective and that during the regular and intended uses of such products, created an increased risk to all users," (*id.* at ¶ 42), and "[d]efendant knew or in the exercise of reasonable care should have known, that the Subject Chainsaw, and its defective design of the gas cap and/or fuel system, were of such a nature that if they were not properly manufactured . . . for the use and purpose for which they were intended . . . they were likely to injure a person," (*id.* at ¶ 48). "These allegations do not provide the Court with a way to reasonably infer that [defendant] knew or should have known about the defects with the [product]." *Kosinski v. Dolium*, No. 8:23-cv-01506-JVS-JDE, 2024 WL 2104593, at *5 (C.D. Cal. Apr. 4, 2024) (dismissing a failure to warn claim in light of similar conclusory allegations). Because knowledge is an essential component of a warning defect claim, the court need not address the allegations with respect to the other elements of this claim. The court therefore finds that plaintiff has failed to adequately allege a negligent products liability claim based upon a failure to warn theory. *Id.* (dismissing a products liability failure to warn claim for failing to adequately allege knowledge and not addressing the other elements of claim); *McGill v. Ford Motor Co.*, No. 24-cv-01084-JST, 2024 WL 2941632, at *5 (N.D. Cal. June 11, 2024) (same).

Accordingly, the court will grant defendant's motion to dismiss plaintiff's negligent products liability claim.

/////

3. Negligence (Claim 2)

Defendant next moves to dismiss plaintiff's second cause of action for negligence, arguing that it is indistinguishable from his third cause of action for negligent products liability and he has failed to adequately plead a failure to recall or retrofit claim. (Doc. No. 19-1 at 21–22.)

Plaintiff does not appear to contest that his second cause of action is largely duplicative of his third cause of action.[12] While plaintiff does not specify which facts overlap, it appears that he asserts all three theories discussed above as part of his general negligence claim. (Doc. No. 18 at ¶¶ 40–43.) Accordingly, for the same reasons discussed above, the court finds plaintiff has not adequately alleged a general negligence claim based upon a design defect, manufacturing defect, or failure to warn theory. *See Faustino v. Alcon Lab'ys, Inc.*, No. 2:15-cv-04145-RGK-AJW, 2015 WL 12839161, at *5 (C.D. Cal. Sept. 22, 2015) (analyzing ordinary negligence claim and negligent products liability claim under the legal standard governing negligent products liability claim where both claims were predicated on substantially the same allegations), *aff'd sub nom. Faustino v. Alcon Lab'ys, Inc. (a division of Novartis AG)*, 692 F. App'x 819 (9th Cir. 2017); *McGill*, 2024 WL 2941632, at *6 ("Plaintiff's general negligence claim is insufficiently pleaded for the same reason as her negligence—products liability claim: she pleads broad legal conclusions and alleges almost no facts to support them.").

The one additional theory plaintiff advances to support his negligence claim that distinguishes count two from count three is that "[d]efendant negligently failed to recall or retrofit the Subject Chainsaw despite knowledge or constructive knowledge of the defect." (Doc. No. 18 at ¶ 44.) "California law [] recognizes that a duty to recall or retrofit a product can arise due to either a shift in industry standards or post-sale knowledge that puts a manufacturer on notice regarding a dangerous product defect." *Roberts v. Electrolux Home Prods., Inc.*, No. 8:12-cv-01644-CAS-VBK, 2013 WL 7753579, at *13 (C.D. Cal. Mar. 4, 2013). As the court has already concluded, plaintiff has not plausibly alleged that defendant knew or should have known of the purported defect. Therefore, the court also concludes that plaintiff has not adequately alleged a

[12] In his opposition, plaintiff states, "Count Two may be pled in the alternative and may overlap factually with Count Three." (Doc. No. 21 at 14.)

general negligence claim based upon a failure to recall or retrofit theory. *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2019 WL 3753456, at *11–12 (N.D. Cal. Aug. 8, 2019) (dismissing negligent failure to recall claim where the plaintiff failed to adequately allege the defendant knew of the purported defect).

Accordingly, the court will grant defendant's motion to dismiss plaintiff's negligence claim.

**C. Leave to Amend**

Leave to amend should be granted "freely" when justice so requires. Fed. R. Civ. P. 15(a). The Ninth Circuit maintains a policy of "extreme liberality generally in favoring amendments to pleadings." *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960). Reasons "such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . ."). A district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

Several of the pleading deficiencies identified in this order[13] could conceivably be cured by additional and more detailed allegations. Therefore, the court will grant plaintiff leave to amend its FAC. *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile.").

---

[13] The court notes that it did not address every pleading deficiency raised by defendant. Plaintiff should therefore not assume that the only existing pleading deficiencies in his complaint are those discussed in this order but should also pay heed to defendant's remaining arguments in support of its motion to dismiss.

**CONCLUSION**

For the reasons above:

1. Defendant's motion to dismiss (Doc. No. 19) is GRANTED in part and DENIED in part as follows:
   a. Defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED;
   b. Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED with leave to amend as to all claims;
2. Plaintiff's request for leave to file a late opposition to defendant's motion to dismiss (Doc. No. 20) is GRANTED;
3. Plaintiff's motion to transfer (Doc. No. 31) is DENIED as moot;
4. Plaintiff shall file its second amended complaint, or alternatively, a notice of his intent not to do so, within twenty-one (21) days from the date of service of this order.

IT IS SO ORDERED.

Dated: **September 28, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE